UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OTTO DELCID, *et al,*<br><br>Plaintiffs,<br><br>HELEN OF TROY, LTD., *et al,*<br><br>Defendants. | New York, N.Y.<br><br>21 Civ. 9569 (DLC)<br><br>**DECLARATION OF F. PAUL BLAND, JR. OF PUBLIC JUSTICE** |

I, F. Paul Bland, Jr., do hereby declare as follows:

1. I am the Executive Director of Public Justice, a national non-profit public interest advocacy organization. I make this declaration of my own personal knowledge.

**My Background and Experience**

2. I am a lawyer licensed to practice law in the States of Maryland, California, and the District of Columbia and in the U.S. Courts of Appeal for ten of the Circuits, and in the United States Supreme Court. I received my law degree from Harvard Law School in 1986.

3. I have argued (or co-argued) and won more than 40 reported decisions from federal and state courts across the nation, including cases in the U.S. Supreme Court (for example, I argued *Home Depot U.S.A. v. Jackson*, 139 S.Ct. 1743 (2019) [jurisdiction under the Class Action Fairness Act]), six of the federal Circuit Courts of Appeal and in ten different state high courts. I have presented at more than 100 continuing legal education programs in more than 30 states and have frequently been quoted in a wide range of national and local media. I have testified in both houses of Congress and in half a dozen state legislatures around the country. I have also testified a number of times before the Standing

Committee on Federal Rules and various regulatory agencies such as the Federal Trade Commission and the Consumer Financial Protection Bureau.

4. I am honored to be the recipient of a number of noteworthy awards, particularly for my work in consumer rights. In 2006, I was named the "Vern Countryman" Award winner by the National Consumer Law Center, which "honors the accomplishments of an exceptional consumer attorney who, through the practice of consumer law, has contributed significantly to the well-being of vulnerable consumers." In 2010, I received the Maryland Legal Aid Bureau's Champion of Justice" Award, and in 2013, I received the Maryland Consumer Rights Coalition's Legal Champion" Award.

5. Public Justice has been counsel in a large number of cases in federal and state trial and appellate courts where we have successfully represented consumers.

**Introduction and Summary**

6. I have been asked by one member of Class Counsel for my opinion as to whether consumer class actions such as this one serve important purposes in America. Because I strongly believe that they do, I agreed to provide this declaration. I am not being paid any money to do so, but do so because I believe it advances the mission of my organization.

7. Many Americans cannot feasibly pursue certain types of legal claims on an individual basis, particularly cases where each person's claims are too small and complex to be litigated against corporation by a private attorney. For all sorts of situations where corporations break the law and hurt a lot of people, there are only two realistic options, given the scarce resources of government enforcers: either (a) individuals can join together to bring a class action lawsuit that holds the company accountable, or (b) the corporation gets away with violating the law. Class action suits allow consumers, workers, investors and others to pool their individual resources to recover -ill-gotten sums and prevent similar misconduct in the future. This mechanism is crucial when going up against well-funded corporations.

8. Class actions are often the most judicially and economically efficient method for courts and litigants to resolve claims involving large groups of similarly injured persons when, as here, the individual measure of damages is relatively small, these claims are only viable if brought as a class action. As the U.S. Supreme Court has recognized, class actions provide "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

**Class Actions Involving Consumer Products**

9. As corporations know, millions of Americans are willing to pay more for products with certain qualities. Many citizens are willing to pay more for products that are made in America, for example, or for food that is organic. Similarly, consumers are willing to spend more for (or decide to buy) products that they believe will prevent disease or improve their health. Unfortunately, from time to time, some corporations will deceptively advertise or label products that do not have such qualities. The ability of consumers to band together in a class action also gives corporations much-needed incentives to comply with the law.

10. There have been quite a few class actions over the years that have successfully protected consumers against these sorts of misleading advertisements. Many corporations have been forced to end dishonest marketing campaigns, and to give refunds to consumers through judgments or settlements in class action cases. Consumers have been able to win injunctive relief where courts ordered corporations to cease misleading and predatory ad campaigns. In some cases, consumers have been able to win refunds from false advertisers, proving their cases through such recognized devices as sophisticated surveys showing the average amount consumers would pay for a product that actually was made in America (as advertised) as compared to what the typical consumer would pay for products actually made in (for example) China.

### Class Actions as Private Enforcement of the Law

11.     Class actions are a market-based solution for addressing widespread breaches of contract, violations of state statutes (as here), or infringement of property rights. The American legal system has turned to class actions as a private alternative to government intervention or regulation, such as one sees instead in Europe. Class actions impose damages only on bad actors, rather than imposing compliance costs on entire industries.

### Class Actions Do Not Drive-Up Costs to Consumers

12.     Pursuant to a directive in Dodd Frank Act, in 2016 the Consumer Financial Protection Bureau released a study of arbitration clauses in financial services contracts. The study paved the way for the Bureau to issue a regulation that would have prohibited lenders from having provisions in their arbitration clauses that prohibit consumers from bringing or being a part of class actions, but this regulation was struck down under the Congressional Review Act, one finding of the CFPB study, however, provides clear empirical evidence that class actions do not increase the costs to consumers. For a period of several years, one substantial set of banks issuing credit cards to consumers were subject to consumer class actions, but other banks were not.

13.     The data showed that banks that use arbitration clauses that banned class actions did *not* reduce the interest and fees they charged consumers. An empirical comparison of four of the largest credit card issuers in the United States (Bank of America, Chase, Capitol One and HSBC) that did not have arbitration clauses with class action bans for 3 ½ years (they stopped using them for this time period as part of a settlement of an antitrust case) with other banks that *did* have forced arbitration clauses shows that the lenders that used arbitration clauses with class action bans did not reduce their interest or fees at all. The banks who were subject to class actions charged consumers the same rates as banks who were not.

**The Concern that Class Actions Pressure Innocent Corporations
to Settle Cases is Not Supported by the Evidence**

14. The best empirical evidence about class-action litigation shows that pressure to settle frivolous claims is greatly exaggerated, if it exists at all. *See* Allan Kanner & Tibor Nagy, *Exploding the Blackmail Myth: A New Perspective on Class Action Settlements*, 57 Baylor L. Rev. 681, 693 (2005) ("The available empirical evidence and a consideration of how federal judges typically manage class actions each suggest that the alleged 'hydraulic pressure on defendants to settle' is itself more myth than reality.").

15. In one of the most comprehensive studies of class actions filed in federal court, the Federal Judicial Center (FJC) expressly found that meritless suits filed as class actions were never certified, but rather "were terminated by rulings on motions to dismiss or motions for summary judgment, not by settlements, coerced or otherwise." Federal Judicial Center, Empirical Study of Class Actions in Four District Courts; Final Report to the Advisory Committee on Civil Rules 90 (1996).

16. Second, the empirical evidence indicates that court-certified classes are settled at roughly the same rate as non-class civil litigation, and nothing about those settlements indicates that defendants are "forced" into them by class certification. *Id. a*t 19, 90 (settlement and trial rates are not the same in class and nonclass civil ligitation).

**The Rule of Attorneys' Fees**

17. To ensure that counsel will be able to undertake risk and complex cases, dozens of federal and state consumer protection statutes incorporate fee-shifting provisions. If a case is successful, the court awards a reasonable fee based upon the time the advocates have spent working on the case. This provides for consistent and predictable outcomes, which is a benefit to all parties.

I declare under the penalty of perjury under the laws of the District of Columbia that the forgoing is true and correct. Executed this 24th day of March of 2023.

By: _____
    F. Paul Bland
    Executive Director